```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

CASHMAN EQUIPMENT CORP.                      CIVIL ACTION

VERSUS                                       NO: 07-3829

BEOUFWAY CONTRACTORS, L.L.C.                 SECTION: R(3)
AND TERRY M. DOVER
```

**ORDER AND REASONS**

Before the Court is plaintiff Cashman Equipment Corporation's motion for preliminary injunction pending arbitration and defendant Beoufway Contractors' motion to dismiss with prejudice. For the following reasons, the Court GRANTS in part and DENIES in part plaintiff's motion and GRANTS in part and DENIES in part defendant's motion.

**I.   BACKGROUND**

    **A.   Factual Background**

This breach of contract suit arises out of a shipbuilding agreement. On January 11, 2006, plaintiff Cashman Equipment Corporation, a Massachusetts marine rental company, contracted

with Beoufway Contractors, a Louisiana shipyard, for the construction of five barges. Under the terms of the agreement, Cashman was to provide Beoufway with plans for the design of the vessels and purchase the steel to be used in the barge construction. Beoufway had four months to complete construction of the barges after it received both the steel and plans. The agreement further provides that ownership in the building materials would vest in Cashman upon their delivery to Beoufway and that Cashman would acquire title to the barges under construction and to component parts as they were fabricated. *See* Construction Agreement at ¶ 6b, R. Doc. 1-3 at 2. Cashman agreed to make payments to Beoufway at various construction milestones, at which its representatives would have the right to enter Beoufway's yard and inspect the work in progress.

  The contract also includes a variety of clauses addressing nonperformance. A liquidated damages clause applies in case Beoufway fails to complete construction on time. Further, if Beoufway fails to perform, Cashman has the right to enter the shipyard and utilize Beoufway's equipment and personnel to complete construction. If Cashman fails to fulfill its obligations, Beoufway has the right to stop work and be paid for all of the work completed up to the point of the stoppage. Cashman, in turn, acquires rights to the work product upon making

payment. The contract also contains a comprehensive arbitration clause, which provides in full:

> All disputes, differences or disagreements between [Cashman] and Beoufway arising out of this Agreement, shall be subject to and resolved by arbitration in accordance with the rules of the *Houston Maritime* Arbitration Association at *New Orleans* Louisiana unless specifically excluded from arbitration in the Agreement. Demand for arbitration shall be made within a reasonable time, *but except for warranty claims*, but in no event may such demand be made more than thirty (30) days after the Actual Delivery date.

Construction Agreement at ¶ 19, R. Doc. 1-3 at 8 (emphasis in original).

On July 25, 2007, Cashman sued Beoufway for breach of contract. Cashman contends that Beoufway failed to perform by not completing any of the barges on schedule and by finishing construction on only two of five barges. Cashman also alleges that Beoufway denied Cashman access to the shipyard on July 24, 2007 when a Cashman representative attempted to enter Beoufway's yard to inspect construction. Cashman's representative avers that Beoufway's superintendent informed him that Beoufway had sold the yard and discontinued work on Cashman's barges. *See* Breit Aff., R. Doc. 1-3 at 16. Cashman further asserts that Beoufway tried to sell Cashman's assets. Cashman claims that it owns more than one million dollars worth of steel delivered to Beoufway's yard and that after Cashman began this action, Beoufway offered to sell the steel and the unfinished barges to other unidentified

companies. *See* Peloquin Aff., R. Doc. 13-3. Cashman seeks both monetary damages and a preliminary injunction requiring Beoufway to grant Cashman access to the shipyard, barring Beoufway from selling its facility and the steel delivered to the yard for its barges, and requiring Beoufway to provide an accounting of all steel delivered to the yard for the construction of its barges. Additionally, in its complaint Cashman applied for a writ of sequestration of the barges and steel under Louisiana Code of Civil Procedure articles 3572 and 3575. In its September 11, 2007 order, the Court determined that it has authority to issue preliminary injunctive relief despite the comprehensive arbitration clause and ordered additional briefing on the application for preliminary injunction.

   Beoufway contends that Cashman has failed to perform. Beoufway concedes that it fell behind schedule in constructing the first two barges and is liable to Cashman under the contract's liquidated damages clause. Beoufway maintains, however, that even with the application of the liquidated damages clause, Cashman still owes payment for the second barge, which it delivered to Cashman in February 2007. The parties agree that Beoufway invoked arbitration in March 2007. Beoufway further posits that it was not late on the remaining three barges based on the dates that it received the necessary steel and design

plans for these vessels. Beoufway claims that Cashman failed to make milestone payments for these barges, and thus Beoufway ceased work on all the barges in line with the terms of the shipbuilding agreement. In further response to Cashman's allegations that Beoufway has denied access to its yard, sold its facility, and is actively offering the steel and barges to other buyers, Beoufway's principal, Terry Dover, acknowledges that Beoufway indeed denied Cashman's representative access to the yard because it considers Cashman to be in breach. But Dover further avers that Beoufway has not sold its facility and has explained to potential buyers that if it were to sell the yard, then it would need to operate a short-term lease to complete construction of Cashman's barges. Further, despite receiving inquiries about Cashman's unfinished barges at the yard, Dover expressly denies offering to sell them or the steel to any third parties specifically because of this litigation. *See* Dover Aff., R. Doc. 20-2.

In apparent response to Beoufway's contentions, Cashman has revised its litigation position. Cashman acknowledges that it no longer seeks a writ of sequestration because no sale of Beoufway's yard or Cashman's steel or barges has taken place. *See* R. Doc. 21 at 2. Nevertheless, Cashman maintains that it is still entitled to the injunctive relief that it initially requested.

Cashman seeks this relief on the ground that arbitration would otherwise be rendered meaningless. There is no indication, however, that Cashman itself has invoked arbitration or that the parties have pursued the arbitration that Beoufway initiated several months ago.

In addition, Beoufway has filed a motion to dismiss with prejudice on the ground that all of Cashman's claims are subject to exclusive remedy through arbitration. The Court addresses the parties' motions in turn.

## II.   DISCUSSION

### A.   Cashman's Motion for Preliminary Injunction

A preliminary injunction is an extraordinary remedy that should be treated as the exception rather than the rule. *See Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). A preliminary injunction should not be granted unless the movant demonstrates by a clear showing: (1) a likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any potential harm to the non-movant if the injunction is granted; and (4) that the injunction will not disserve the public interest. *See Speaks v. Kruse*, 445 F.3d 396, 399-400 (5th Cir. 2006); *Valley v. Rapides Parish Sch. Bd.*,

118 F.3d 1047, 1051 (5th Cir. 1997). The movant must satisfy all four factors; a failure to satisfy one of the four factors requires a denial of the preliminary injunction.

   *1.   Beoufway's Shipyard*

The Court finds that Cashman is not entitled to a preliminary injunction barring Beoufway from selling its shipyard. Cashman has an insufficient interest in the yard itself and is therefore unlikely to succeed on the merits of any claim concerning the yard. The Fifth Circuit has embraced the view that "'[b]ecause the authority to issue a preliminary injunction rests upon the authority to give final relief, the authority to freeze assets by a preliminary injunction must rest upon the authority to give a form of final relief to which the asset freeze is an appropriate provisional remedy.'" *Fed. Savings & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 561 (5th Cir. 1987) (quoting *F.T.C. v. H.N. Singer, inc.*, 668 F.2d 1107, 1112 (9th Cir. 1982)). The general rule is that a federal court's equitable power does not "reach a defendant's assets unrelated to the underlying litigation" or entail the power to freeze such assets so that they "may be preserved to satisfy a potential money judgment." *In re Fredeman Litigation*, 843 F.2d 821, 824 (5th Cir. 1988) (citing *De Beers Consolidated Mines v. United States*, 325 U.S. 212, 222-23 (1945)). This principle distinguishes property that is subject

to a final decree — in this case, the steel and barges under construction — from a defendant's assets that are not the subject of dispute but nonetheless might be used to satisfy a final judgment. *Id*. More recently, the Supreme Court recognized this limitation on the equitable powers of federal courts in *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999). In that case, the Court invalidated a preliminary injunction freezing the assets of a potential debtor because of the "historical principle that before judgment (or its equivalent) an unsecured creditor has no rights at law or in equity in the property of his debtor." *Id.* at 330. A rule that would allow a non-judgment creditor to "'impeach transfers, or interfere with the business affairs of the alleged debtor would manifestly be susceptible of the grossest abuse.'" *Id.* (quoting Wait, *Fraudulent Conveyances* § 73, 110-11).

There is no indication that Cashman has any proprietary or ownership interest in Beoufway's yard that would entitle it to restrain Beoufway from selling the facility or using it as collateral. Cashman claims a right under the contract to enter the yard and use it to construct the barges, but it does not claim a security interest in the yard itself or even argue that its alleged right of access constitutes an interest sufficient to restrain Beoufway from selling the yard. In addition, the Court

notes that the basis for Cashman's application for an injunction barring the sale of the yard is erroneous. Cashman based its request on the declaration of one of its representatives, Conrad Breit, who avers that Beoufway's superintendent denied him access to the yard on July 24, 2007 and told him that Beoufway had sold the yard. *See* Breit Aff., R. Doc. 1-3 at 16. It is clear, however, that Beoufway has not sold its yard. Beoufway's principal, Terry Dover, states that Beoufway neither had any arrangement to sell the yard in July nor made any arrangements since, and that Beoufway has no intention of selling its yard. *See* Dover Aff., R. Doc. 20-2. In the absence of any security interest in the shipyard by Cashman and any evidence of an arrangement for the sale of the yard, Cashman has failed to demonstrate that it would likely succeed on the merits of a claim about the disposition of the yard. Accordingly, it is not entitled to an injunction barring Beoufway from selling or otherwise disposing of its shipyard.

    2.   *The Steel*

Cashman's application for a preliminary injunction barring the sale of the steel delivered under its contract and the barges under construction is a different matter. The Fifth Circuit recognizes that "an injunction may issue to protect assets that

are the subject matter of the dispute or to enjoin conduct that might be enjoined under a final order." *Dixon*, 843 F.2d at 827. A court's equitable power encompasses such property "so as to preserve the court's ability to render a meaningful decision on the merits." *Dixon*, 835 F.2d at 562. Exercising this power, courts have enjoined the sale of, or interference with, assets that are the underlying subject matter of contractual disputes. *See, e.g., Moreau v. Oppenheim*, 663 F.2d 1300, 1311-12 (5th Cir. 1981) (involving an injunction barring the sale of horses pending resolution of a contractual dispute); *Productos Carnic, S.A. v. Central Am. Beef and Seafood Trading Co.*, 621 F.2d 683 (5th Cir. 1980) (upholding preliminary injunction enjoining the transfer of frozen beef pending resolution of bankruptcy dispute). In this regard, a preliminary injunction preserves the status quo pending resolution of the parties' dispute.

    Restraining Beoufway from selling the steel and barges falls within the Court's range of equitable powers. Cashman claims an ownership interest in the steel delivered for the construction of its barges and the barges under construction, and Beoufway does not dispute that Cashman has such an interest. Both the steel and the barges constitute the subject matter of the disputed contract. Indeed, the contract obliges Cashman to purchase the steel, which is to be used in construction of the barges. It

further provides that title to the steel shall vest in Cashman upon delivery and that Cashman shall have title to the barges under construction. Were Beoufway to sell the steel, construction of the barges could not be completed, and arbitration would be rendered nugatory. Sale of the barges themselves would equally frustrate arbitration. Additionally, enjoining Beoufway from selling the steel and barges poses no hardship, as Beoufway has declared that it has not entered into any sale agreements and has actually declined offers to sell the Cashman barges. *See* Dover Aff., R. Doc. 20-2 at 2. Accordingly, the Court enjoins Beoufway from selling any steel acquired for the construction of Cashman's barges and the barges under construction, pending arbitration. The Court finds that any further equitable relief is unnecessary to preserve the status quo and specifically does not require an accounting of the steel.

### B.   Beoufway's Motion to Dismiss

Beoufway also moves to dismiss Cashman's suit with prejudice because, it contends, all of plaintiff's claims are subject to arbitration. A court may dismiss a lawsuit when all issues are subject to arbitration. *See Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674, 678 (5th Cir. 1999); *Alford v. Dean Witter Reynolds*, 975 F.2d 1161, 1164 (5th Cir. 1992). Cashman and Beoufway's agreement

does contain a comprehensive arbitration clause. All of Cashman's damage claims are dismissed without prejudice in light of the arbitration agreement. Cashman's claims for an injunction preventing the sale of Beoufway's yard and for an accounting pre-arbitration are dismissed as without merit. Accordingly, the Court maintains jurisdiction only to the extent of the preliminary injunction restraining Beoufway from selling Cashman's steel or its barges pending arbitration.

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part plaintiff's motion for preliminary injunction. Specifically, the Court enjoins Beoufway, its assigns, and all others in active concert or participation with Beoufway from selling, transferring, or otherwise encumbering any steel acquired for construction of the barges under the shipbuilding agreement or any barge under construction under that agreement, pending arbitration. The Court GRANTS defendant's motion to dismiss Cashman's damage claims without prejudice and GRANTS Beoufway's motion to dismiss Cashman's other claims for injunctive relief and pre-arbitration accounting.

New Orleans, Louisiana, this 24th day of October, 2007

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE